AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of New Jersey

| | |
|---|---|
| United States of America<br>v.<br>Dustin Aaron Peters<br><br>*Defendant(s)* | Case No.<br>20-mj-2006 (JS) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 9, 2020__ in the county of __Cape May__ in the _____ District of __New Jersey__, the defendant(s) violated:

| Code Section | Description of Offenses |
|---|---|
| 18 U.S.C. Section 922(a)(4)<br>18 U.S.C. Section 930 | See Attachment A hereto. |

This criminal complaint is based on these facts:

See Attachment B hereto.

☑ Continued on the attached sheet.

_____
Complainant's signature

John E. Montgomery, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/16/2020

_____
Judge's signature

City and state: Camden, New Jersey

Hon. Joel Schneider, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## COUNT 1

**(Firearms – Unlawful Acts – Interstate Transportation of a Machinegun)**

On or about January 9, 2020, in Cape May County, the District of New Jersey, the defendant,

DUSTIN AARON PETERS,

did knowingly and unlawfully transport in interstate commerce a machinegun (as defined in section 5845 of the Internal Revenue Code of 1986) without the specific authorization of the Attorney General, namely, transporting Romarm/Cugir AK-47 7.62 Caliber rifle which was modified to shoot automatically more than one shot, without manual reloading, by a single function of the trigger into the state of New Jersey.

In violation of Title 18, United States Code, Section 922(a)(4).

## COUNT 2

**(Possession of Firearms and Dangerous Weapons in Federal Facilities)**

On or about January 9, 2020, in Cape May County, the District of New Jersey, the defendant,

DUSTIN AARON PETERS,

did knowingly and unlawfully possess a firearm or other dangerous weapon in a Federal Facility, namely, possessing a Century Arms 9MM handgun and a Romarm/Cugir AK-47 7.62 Caliber rifle on the United States Coast Guard Training Center Cape May, in New Jersey.

In violation of Title 18, United States Code, Section 930.

## ATTACHMENT B

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND WARRANT

I, John E. Montgomery, Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, being duly sworn, state as follows

1. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, photographs and video recordings of the evidence. Where statements of others are related herein, they are related in substance and part. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date and time, I am asserting that it took place on or about the date and time alleged.

2. The United States Coast Guard Training Center Cape May (hereinafter "TRACEN") is located at 1 Munro Avenue in Cape May, New Jersey. TRACEN is the 5th largest base in the Coast Guard and the sole accession point for the entire enlisted workforce of the Coast Guard.

3. TRACEN has secured vehicle access to the base through an entrance on Pennsylvania Avenue/Munro Avenue, in Cape May, New Jersey. Prior to the public access point, signage is conspicuously posted notifying individuals attempting to or wanting to access TRACEN that the possession of firearms and/or other dangerous weapons on a Federal Facility is prohibited.

4. On January 9, 2020, at approximately 5:30 p.m., PETERS drove his vehicle, a white 2016 Jeep bearing a North Carolina license plate, through the Pennsylvania Avenue /Munro Avenue public access point. PETERS' vehicle was selected for a random security screening by Coast Guard Security personnel.

5. During the security search, Coast Guard Security personnel observed handgun ammunition in the passenger compartment of the PETERS' vehicle. PETERS was the sole occupant of the vehicle and was subsequently removed during the remainder of the search.

6. Coast Guard Security personnel continued to search the vehicle and observed a loaded 9mm Century Arms semi-automatic pistol, loaded with 7 live rounds, including one live round in the chamber, in the trunk area of the vehicle.

7. In the same area of the trunk, Coast Guard Security personnel observed an AK-47 style rifle and several magazines. Coast Guard Security personnel detained PETERS and notified the Cape May Police Department. Detective Sergeant Joseph Walker arrived at the location at approximately 8:30 p.m. and met with PETERS. PETERS was given Miranda warnings and consented to a search of the vehicle. Detective Sergeant Joseph Walker and others conducted the search of the vehicle and recovered the following items:

      i. one Century Arms TP9 Version 2 Serial # T6472-17A100211;
     ii. one AK-47 7.62 Caliber Romarm/Cugir Serial # NM575, loaded with 7 live rounds including one in the chamber;
    iii. one ballistic vest carrier with plate;
    iv. one hatchet;
     v. one bayonet knife;
    vi. one gas mask with canister;
   vii. one fire resistant hood;
  viii. one nylon chest rig;
    ix. seven 7.62 caliber magazines with 30 round capacities;
     x. twelve (12) hollow point 9MM rounds;
    xi. seven ball 9MM rounds;
   xii. two 20 round 9MM magazines;
  xiii. two 18 round 9MM magazines;
   xiv. one 9MM holster;
   xv. one flare gun;
   xvi. one box 7.62 caliber ammunition (40 rounds);
  xvii. two boxes 5.45 ammunition (20 rounds each);
 xviii. one imitation ballistic helmet;
   xix. twenty-three (23) 7.62 caliber rounds;
   xx. one night vision magnifier; and
   xxi. one medical kit.

8.  PETERS was present during the search of his vehicle. After the AK-47 rifle was located, and without being questioned, PETERS stated that he had converted the rifle so that it would fire fully automatic.

9.  PETERS agreed to waive his Miranda rights and speak to Detective Thomas Toland of the Cape May Police Department and Detective Jack McDermott of the Cape May County Prosecutor's Office. At approximately 9:40 p.m., a recorded statement was taken from PETERS. During the statement, PETERS told the detectives that he placed all of the items in his vehicle, and drove from North Carolina, through Virginia, to New Jersey, to attend a family event at TRACEN. PETERS said that he purchased the AK-47 rifle in Virginia, and personally modified it to fire fully automatic. PETERS acknowledged that he knew it was against the law to modify the weapon to fully automatic fire. PETERS also acknowledged that he knew it was against the law to maintain the modified AK-47 rifle in North Carolina and in New Jersey.

10. PETERS told the detectives that he did not have a permanent residence, but last lived in Wilmington, North Carolina. PETERS told the detectives that he had spoken to his father while en route to TRACEN. PETERS said that his father advised him not to take the weapons to TRACEN because of the rules against having firearms on the base. PETERS acknowledged that he did not listen, stating that he knew it was possible that he may be stopped, but was not expecting that to actually happen.

11. PETERS told the detectives that when he approached the entrance onto the base, he saw the signage stating that firearms were prohibited, but opted not to turn around. PETERS said that when his vehicle was stopped for the random search, he told the Coast Guard Security personnel that he had a pistol in the vehicle, but did not tell anyone that he had a modified fully automatic AK-47 rifle.

3

12. According to officials with the Alcohol Tobacco and Firearms Bureau, PETERS is not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector and did not have the authorization of the Attorney General of the United States to transport the modified AK-47 rifle.